UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

ANTHONY DION LEWIS,

        Plaintiff,

    v.                                             18-CV-6074
                                                   DECISION AND ORDER
COMMISSIONER OF SOCIAL
SECURITY,

        Defendant.

On January 24, 2018, the plaintiff, Anthony Dion Lewis, brought this action under the Social Security Act ("the Act"). He seeks review of the determination by the Commissioner of Social Security ("Commissioner") that he was not disabled. Docket Item 1. On October 5, 2018, Lewis moved for judgment on the pleadings, Docket Item 11; on November 29, 2018, the Commissioner responded and cross-moved for judgment on the pleadings, Docket Item 15; and on December 20, 2018, Lewis replied, Docket Item 16. On July 12, 2019, the parties provided supplemental briefing in response to this Court's request. Docket Items 18, 19.

For the reasons stated below, this Court grants Lewis's motion in part and denies the Commissioner's cross-motion.

## BACKGROUND

I.  PROCEDURAL HISTORY

   A.   Application and Initial Denial

On December 19, 2014, Lewis applied for disability insurance benefits. Docket Item 8 at 82. He claimed that he had been disabled since June 2, 2014, due to neck surgery, back pain, severe hypertension, and anxiety. *Id.*

On March 26, 2015, Lewis received notice that his application was denied because he was not disabled under the Act. *Id.* at 96-100. He requested a hearing before an administrative law judge ("ALJ"), *id.* at 104-11, which was held on August 1, 2016, *id.* at 45.

   B.   Hearing

At the hearing, Lewis was represented by Judith Cotton, a paralegal for Lewis's attorney, Lawrence L. Heller, Esq. *Id.* at 43 47. Cotton informed the ALJ that "there was a block of records that [her firm] had requested from another law office, which had the medicals completely documented," but that her firm "did not get them." *Id.* at 48. She told the ALJ that she expected to receive those medical records "in 48 hours." *Id.* As a result, the ALJ decided to "keep the record open for 14 days for the additional medical records." *Id.*

During the hearing, Lewis explained that he had been in a car accident in October 2013. *Id.* at 63. He said that he tore his right shoulder, fractured his neck, and injured his lower back. *Id.* For eight months after the accident, Lewis said, he underwent "[a] lot of physical therapy." *Id.* at 65. In the spring of 2014, he was treated by Matthew M. Tomaino, M.D., an orthopedic surgeon, who found that Lewis "had a tear

in [his] right shoulder" that needed to be repaired and recommended surgery. *Id.* at 65-66.

Lewis said that in February 2015 he had surgery on his neck. *Id.* at 66-67. He said that after his doctors "cleared" him for his neck surgery, they scheduled back surgery. *Id.* at 68. In January 2016, doctors "repaired the lumbar and placed screws inside [his] back." *Id.*

### C. Post-Hearing Record Development

On August 2, 2016, attorney Heller wrote to Timothy Bellavia, Lewis's attorney in another matter, *id.* at 37, requesting Lewis's medical records, *id.* at 41. On August 30, 2016, paralegal Cotton asked the ALJ for a two-week extension to obtain the records because she had not received a response from Bellavia. *Id.* at 40. On September 6, 2016, Cotton requested another extension for the same reason. *Id.* at 39.

On September 7, 2016, the ALJ himself wrote to Bellavia. *Id.* at 37. The ALJ noted that it had "come to [his] attention that Mr. Lewis and his current attorney . . . have encountered problems obtaining copies of medical records relating to Mr. Lewis that may be in [Bellavia's] possession." *Id.* The ALJ asked that Bellavia "provide the requested documents to" Lewis or his lawyer "immediately" and instructed Bellavia to write him a letter explaining his inability to comply with the request if "it is not possible to comply." *Id.*

On September 22, 2016, Bellavia responded to the ALJ. *Id.* at 36. Bellavia said that he had "not received any written request for Mr. Lewis's medical records from either Mr. Lewis or his attorney, Mr. Heller." *Id.* But he also noted that he and his partner were out of the office for much of August. *Id.* Bellavia explained that after he saw the

3

ALJ's letter, he had Lewis's "medical records copie[d]" and contacted both Lewis and Heller to "inform them that the copies were ready for pick-up," but he had "not heard back from either of them to this point," *id*.

The ALJ never received "recent treatment records for [Lewis's] alleged back and neck pain," *id.* at 32, or "records pertaining to [Lewis's] lumbar surgery," *id.* at 30 n.2.

### D. Decision and Appeal

The ALJ issued a decision on January 13, 2017, confirming the finding that Lewis was not disabled. *Id.* at 35. Lewis appealed the ALJ's decision, but his appeal was denied, and the decision then became final. *Id.* at 5-8.

## II. RELEVANT MEDICAL EVIDENCE

The following summarizes the medical evidence most relevant to Lewis's objection. Lewis was examined by a number of providers but seven—Adam S. Cassel, D.C.; Steven M. Ess, D.C.; Rachel F. Gianni, D.C.; Jerry J. Tracy III, M.D.; Naseer A. Tahir, M.D.; Seth Zeidman, M.D.; and Clifford Ameduri, M.D.—are most significant to his claims before this Court.

### A. Rochester Chiropractic Associates

Adam S. Cassel, D.C., a chiropractor, saw Lewis on October 28, 2013. Docket Item 8 at 691. Dr. Cassel noted a "[r]ange of motion loss . . . in the lumbar regions." *Id*. He also noted "[t]enderness to palpation . . . in the left lumbar, lumbar, right lumbar and right sacroiliac regions." *Id*.

4

Lewis saw Dr. Cassel again on October 31, 2013. *Id.* at 692. At that visit, Dr. Cassel found an "elevated ilium on the right" and a "[p]elvic obliquity on the left." *Id.* He also found that Lewis continued to have a "[l]oss of normal flexion mechanics." *Id.*

On November 4, 2013, Dr. Cassel examined Lewis again and noted tenderness to palpation in various regions of his back as well as several areas of subluxation. *Id.* at 693. Dr. Cassel did range-of-motion testing, which indicated that Lewis had decreased range of motion. *Id.* at 693-94. "After reviewing examination findings," Dr. Cassel developed a plan requiring Lewis to be seen three times a week for ten weeks, "at which point he will be reassessed." *Id.* at 695. During this treatment plan, Lewis also was treated by Steven M. Ess, D.C., and Rachel F. Gianni, D.C., both chiropractors. *See, e.g.*, *id.* at 706, 709.

On February 3, 2014, Dr. Cassel reexamined Lewis and determined that his injuries were severe enough to require another ten weeks of treatment, now at the reduced frequency of twice weekly. *Id.* at 732. After a reexamination of Lewis on May 7, 2014, Amorette B. Smith, D.C., a chiropractor, determined that Lewis's treatment should be continued for at least eight more weeks, but only once weekly. *Id.* at 758. On July 16, 2014, Dr. Cassel determined that Lewis's treatment plan should be adjusted so that he would be seen twice a month for the next three months. *Id.* at 767. Lewis continued to be treated at the Rochester Chiropractic Associates until at least November 14, 2014. *Id.* at 779. At that time, treatment notes indicated that Lewis continued to have "[r]ange of motion loss . . . in the lumbar regions" and other issues. *Id.*

### B. Interventional Pain Management of Rochester

Jerry J. Tracy III, M.D., an anesthesiologist and pain management specialist, evaluated Lewis on December 14, 2013. *Id.* at 469-72. Dr. Tracy found that Lewis had limited range of motion of the lumbar spine, diagnosed lumbar and cervical radiculopathy, recommended that Lewis continue his chiropractic treatments, and determined that Lewis was a candidate for lumbar epidural steroid injections. *Id.* at 471. Dr. Tracy also ordered a pain fiber nerve study, which "reveal[ed] moderate findings involving the right and le[f]t C6 and C8 nerves," and a lumbar study, which "revealed [v]ery severe findings in the right S1 nerve and marked right L5 findings." *Id.* at 473. On March 14, 2014, and March 22, 2014, Lewis received epidural steroid injections. *Id.* at 474, 487. Dr. Tracy's progress notes from May 17, 2014, indicate that Lewis had "responded sub-optimally to the conservative chiropractic treatment and medical co-management and continue[d] to have intractable pain and/or biomechanical dysfunction." *Id.* at 476. Because Lewis wanted to avoid surgery, however, Dr. Tracy recommended continued chiropractic treatments two to three times a week. *Id.* at 483.

### C. Rochester Brain & Spine

Naseer A. Tahir, M.D., an anesthesiologist and pain management specialist, evaluated Lewis on January 19, 2015. *Id.* at 421-24. Dr. Tahir noted tenderness of the left and right neck, as well as of the lumbar spine. *Id.* at 423. Dr. Tahir diagnosed Lewis with cervical spondylosis and degenerative disc disease and prescribed an interlaminar lumbar epidural steroid injection, which Lewis received that same day. *Id.* at 423-25.

Seth Zeidman, M.D., a neurosurgeon, evaluated Lewis on January 24, 2015. After finding that conservative physical therapy had failed to address Lewis's pain, Dr. Zeidman recommended surgery to address Lewis's cervical spondylosis. *Id.* at 429-31. Dr. Zeidman noted that Lewis has "decreased strength throughout his upper extremities" and that "[r]eview of his MRI of his cervical spine show[ed] mild central canal narrowing . . . [, m]ild bilateral neural foraminal narrowing[,] . . . and mild right neural foraminal narrowing," all of which "correlate[d] with his symptoms [of pain in his cervical spine]." *Id.* at 430-31.

On February 9, 2015, Dr. Zeidman performed an anterior cervical discectomy and fusions to repair Lewis's cervical spondylosis. *Id.* at 401-02. One post-operative note from February 24, 2015, indicated that Lewis's symptoms had "resolved following surgery, but [had] returned more recently." *Id.* at 442-44. Lewis reported pain in his left arm, back, and neck and said that he was still taking narcotics for his pain. *Id.* At some point, Dr. Zeidman referred Lewis to his colleague, Clifford Ameduri, M.D., a physiatrist, for further treatment. *Id.* at 454.

Dr. Ameduri evaluated Lewis on October 13, 2015, and ordered an electromyography ("EMG") study and MRI of the lumbar spine. *Id.* at 454. The EMG showed "active bilateral right greater than left L5 and S1 radiculopathy." *Id.* at 457. The MRI, dated October 21, 2015, showed disc extrusion and moderate to severe neuroforaminal narrowing. *Id.* at 461.

### III. THE ALJ'S DECISION

In denying Lewis's application, the ALJ evaluated Lewis's claim under the Social Security Administration's five-step evaluation process for disability determinations. *See*

7

20 C.F.R. § 404.1520. At the first step, the ALJ must determine whether the claimant is currently engaged in substantial gainful employment. § 404.1520(a)(4)(i). If so, the claimant is not disabled. *Id.* If not, the ALJ proceeds to step two. § 404.1520(a)(4).

At step two, the ALJ decides whether the claimant is suffering from any severe impairments. § 404.1520(a)(4)(ii). If there are no severe impairments, the claimant is not disabled. *Id.* If there are any severe impairments, the ALJ proceeds to step three. § 404.1520(a)(4).

At step three, the ALJ determines whether any severe impairment or impairments meet or equal an impairment listed in the regulations. § 404.1520(a)(4)(iii). If the claimant's severe impairment or impairments meet or equal one listed in the regulations, the claimant is disabled. *Id.* But if the ALJ finds that no severe impairments meet or equal any in the regulations, the ALJ proceeds to step four. § 404.1520(a)(4).

As part of step four, the ALJ first determines the claimant's residual functional capacity ("RFC"). *See* §§ 404.1520(a)(4)(iv); 404.1520(d)-(e). The RFC is a holistic assessment of the claimant—addressing both severe and nonsevere medical impairments—that evaluates whether the claimant can perform past relevant work or other work in the national economy. *See* 20 C.F.R. § 404.1545.

After determining the claimant's RFC, the ALJ completes step four. 20 C.F.R. § 404.1520(e). If the claimant can perform past relevant work, he or she is not disabled and the analysis ends. § 404.1520(f). But if the claimant cannot, the ALJ proceeds to step five. 20 C.F.R. §§ 404.1520(a)(4)(iv); 404.1520(f).

In the fifth and final step, the Commissioner must present evidence showing that the claimant is not disabled because the claimant is physically and mentally capable of

adjusting to an alternative job. *See Bowen v. Yuckert*, 482 U.S. 137, 146 n.5 (1987); 20 C.F.R. § 404.1520(a)(4)(v), (g). More specifically, the Commissioner bears the burden of proving that the claimant "retains a residual functional capacity to perform alternative substantial gainful work which exists in the national economy." *Rosa v. Callahan*, 168 F.3d 72, 77 (2d Cir. 1999).

In this case, the ALJ determined at step one that Lewis had not engaged in "substantial gainful activity" since June 2, 2014, the alleged onset date. Docket Item 8 at 27. At step two, the ALJ found that Lewis had the following severe impairments: "degenerative disc disease of the lumbar spine, right shoulder impingement syndrome status post arthroscopy, and obesity." *Id.* At step three, the ALJ determined that Lewis did "not have an impairment or combination of impairments that meet[ ] or medically equal[ ] the severity of one of the listed impairments in 20 CFR Part 404, subpart P, Appendix 1." *Id.* at 29.

In assessing Lewis's RFC, the ALJ determined that Lewis could perform sedentary work as defined in 20 C.F.R. § 404.1567(a),[1] but with the following limitations:

> The claimant frequently can balance and stoop. He occasionally can climb ramps and stairs, kneel, crouch, and crawl. He cannot perform work climbing ladders, ropes, and scaffolds. He occasionally can reach overhead (bilaterally). He cannot work around unprotected heights or moving mechanical parts. He cannot operate motorized equipment as part of a job. He must be able to sit for 5 minutes after standing for 25 minutes, or stand

---

[1] "Sedentary work involves lifting no more than 10 pounds at a time and occasionally lifting or carrying articles like docket files, ledgers, and small tools. Although a sedentary job is defined as one which involves sitting, a certain amount of walking and standing is often necessary in carrying out job duties. Jobs are sedentary if walking and standing are required occasionally and other sedentary criteria are met." 20 C.F.R. § 404.1567(a).

9

for 5 minutes after sitting for 25 minutes, but he can continue working in either position.

*Id.* at 29-30.

At step four, the ALJ determined that Lewis was "unable to perform any past relevant work." *Id.* at 33. But at step five, the ALJ determined that the Commissioner sustained his burden of establishing that Lewis had the RFC to perform "jobs that exist in significant numbers in the national economy." *Id.* at 34. Specifically, the ALJ credited the testimony of a vocational expert that Lewis could perform jobs such as a document preparer, an information clerk, or a sorter. *Id.*

## **STANDARD OF REVIEW**

"The scope of review of a disability determination . . . involves two levels of inquiry." *Johnson v. Bowen*, 817 F.2d 983, 985 (2d Cir. 1987). The court "must first decide whether [the Commissioner] applied the correct legal principles in making the determination." *Id.* This includes ensuring "that the claimant has had a full hearing under the . . . regulations and in accordance with the beneficent purposes of the Social Security Act." *Moran v. Astrue*, 569 F.3d 108, 112 (2d Cir. 2009) (quoting *Cruz v. Sullivan*, 912 F.2d 8, 11 (2d Cir. 1990)). Then, the court "decide[s] whether the determination is supported by 'substantial evidence.'" *Johnson*, 817 F.2d at 985 (quoting 42 U.S.C. § 405(g)). "Substantial evidence" means "more than a mere scintilla. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401 (1971) (quoting *Consolidated Edison Co. v. NLRB*, 305 U.S. 197, 229 (1938)). "Where there is a reasonable basis for doubt whether the ALJ applied correct legal principles, application

of the substantial evidence standard to uphold a finding of no disability creates an unacceptable risk that a claimant will be deprived of the right to have her disability determination made according to correct legal principles." *Johnson*, 817 F.2d at 986.

## **DISCUSSION**

Lewis argues that the ALJ erred in three ways. Docket Item 11-1 at 9-14. First, he argues that "the ALJ's physical RFC was based entirely on his own lay judgment." *Id.* at 9-10. Second, he argues that "the ALJ failed to adequately develop a complete medical history." *Id.* at 10-12. Finally, he argues that "the ALJ did not offer any legitimate explanation as to why [Lewis's] subjective allegations lacked credibility." *Id.* at 12-14.

This Court agrees with Lewis that because the ALJ failed to adequately develop a complete medical record, Lewis was denied "a full hearing under the . . . regulations." *See Moran*, 569 F.3d at 112 (quoting *Cruz*, 912 F.2d at 11). The Court therefore remands the matter so that the ALJ can further develop the record and reconsider Lewis's claims in light of the expanded record. Because Lewis's remaining objections concern the same lower back impairment as to which the ALJ must further develop the record, the Court does not consider those arguments at this time.

"Because a hearing on disability benefits is a non-adversarial proceeding, the ALJ generally has an affirmative obligation to develop the administrative record." *Perez v. Chater*, 77 F.3d 41, 47 (2d Cir. 1996) (citing *Echevarria v. Sec'y of Health & Human Servs.*, 686 F.2d 751, 755 (2d Cir. 1982)); *see also Pratts v. Chater*, 94 F.3d 34, 37 (2d Cir. 1996) (same); 42 U.S.C. §§ 423(d)(5)(B) (requiring that the Commissioner, prior to rendering any eligibility determination, "make every reasonable effort to obtain from the

11

individual's treating physician (or other treating health care provider) all medical evidence, including diagnostic tests, necessary in order to properly make such determination"). Thus, "where there are deficiencies in the record, an ALJ is under an affirmative obligation to develop a claimant's medical history 'even when the claimant is represented by counsel or . . . by a paralegal.'" *Rosa*, 168 F.3d at 79 (quoting *Perez*, 77 F.3d at 47). On the other hand, "where there are no obvious gaps in the administrative record, and where the ALJ already possesses a 'complete medical history,' the ALJ is under no obligation to seek additional information in advance of rejecting a benefits claim.'" *Id.* at 79 n.5 (quoting *Perez*, 77 F.3d at 48)).

The Social Security Administration's own regulations reflect this duty, stating that "[b]efore we make a determination that you are not disabled, we will develop your complete medical history . . . [and] will make every reasonable effort to help you get medical reports from your own medical sources when you give us permission to request the reports." 20 C.F.R. § 404.1512(d)(1). The regulations explain that "every reasonable effort" means that "we will make an initial request for evidence from your medical source or entity that maintains your medical source's evidence," and, "at any time between 10 and 20 calendar days after the initial request, if the evidence has not been received, we will make one follow-up request to obtain the medical evidence necessary to make a determination." *Id.* at § 404.1512(d)(1)(i).

In this case, there is an "obvious gap" in the medical record. Despite Lewis's testifying that he underwent back surgery in January 2016, Docket Item 8 at 68, the ALJ analyzed evidence addressing Lewis's back and neck injuries only through October 21, 2015, *id.* at 32. In his January 2017 decision, the ALJ mentioned the surgery only in

12

passing. *See id.* at 30 ("[T]he medical record does not contain any recent treatment records for the claimant's alleged back and neck pain."); *see also id.* at 30 & n.2 (noting that Lewis "underwent lumbar surgery where screws were placed in the lumbar area" but failing to analyze evidence related to that surgery on the grounds that the "medical file does not contain any records pertaining to the claimant's lumbar surgery"). The ALJ nevertheless concluded that "[t]he objective medical evidence is not consistent with [Lewis's] allegations of the severity of his *symptoms of back and neck pain*." *Id.* at 31 (emphasis in original).

The Commissioner argues that the ALJ fulfilled his obligation to undertake "every reasonable effort" to develop a complete medical history when he sent a letter to Lewis's former attorney. Even assuming that contacting a claimant's former counsel—rather than the claimant's medical source directly—satisfies an ALJ's obligation to develop the record, however, the ALJ's efforts still fell short of the "every reasonable effort" standard. The ALJ contacted Lewis's former attorney only once, without the second follow-up required by the Commissioner's own regulations. *See* 20 C.F.R. § 404.1512(d)(1)(i).

Because Lewis's back issues are central to his claim for disability benefits, the ALJ's failure to obtain the records related to Lewis's back surgery—or at least to recontact Lewis's former attorney—was a legal error that resulted in the denial of a full hearing. "Given the need to apply the proper legal standard, the Court will decline at this time to consider whether substantial evidence exists to support the findings the ALJ made." *Bonet ex rel. T.B. v. Colvin*, No. 1:13-CV-924, 2015 WL 729707, at *7 (N.D.N.Y. Feb. 18, 2015). On remand, the ALJ must assist Lewis in obtaining his recent medical

records from attorney Bellavia, directly from the providers, or from other available sources.

## **CONCLUSION**

For the reasons stated above, the Commissioner's motion for judgment on the pleadings, Docket Item 15, is DENIED, and Lewis's motion for judgment on the pleadings, Docket Item 11, is GRANTED in part and DENIED in part. The decision of the Commissioner is VACATED, and the matter is REMANDED for further administrative proceedings consistent with this decision.

SO ORDERED.

Dated:     October 18, 2019
             Buffalo, New York

                                      *s/ Lawrence J. Vilardo*
                                      LAWRENCE J. VILARDO
                                      UNITED STATES DISTRICT JUDGE